UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION



Under the E-Government Act and
Judicial Conference policy

| | |
|---|---|
| COAL, ICE, BUILDING MATERIAL AND SUPPLY DRIVERS, HEAVY HAULERS, WAREHOUSEMEN, AND HELPERS LOCAL UNION NO. 716, AN AFFILIATE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>      Petitioner,<br><br>  v.<br><br>SPURLINO MATERIALS OF INDIANAPOLIS, LLC,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 1:07-cv-0280-DFH-JMS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Coal, Ice, Building Material and Supply Drivers, Riggers, Heavy Haulers, Warehousemen & Helpers, Local 716 filed this action to compel defendant Spurlino Materials of Indianapolis, LLC, to arbitrate a grievance over the suspension and firing of a Spurlino Materials employee, Mark Sims. The parties have filed cross-motions for summary judgment. As explained below, the court grants Local 716's motion, denies Spurlino Materials' motion, and orders arbitration of the grievance. Spurlino Materials' arguments weave together the merits of its reasons for suspending and firing Sims with its arguments against arbitration. The broad arbitration clause in the Project Labor Agreement leaves

those issues about both the merits and the scope of the agreement to the arbitrator.

*Summary Judgment Standard*

Motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A motion should be granted as long as no rational fact finder could return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view all facts and draw all legitimate inferences in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). That both sides have filed motions for summary judgment does not alter the applicable standard; the court must consider each motion independently and must deny both motions if there is a genuine issue of material fact. *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp. 2d 891, 905-06 (N.D. Ill. 2001). In considering cross-motions for summary judgment, the court must give each party the benefit of all conflicts in the evidence and the

benefit of all reasonable inferences that might be drawn from the evidence in its favor when in the role of non-moving party.

In cases involving collective bargaining agreements, issues of arbitrability are often subject to summary judgment. See, *e.g.*, *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Int'l Union v. TriMas Corp.*, — F.3d —, 2008 WL 2609253, No. 07-1688 (7th Cir. July 3, 2008) (affirming summary judgment ordering arbitration); *Beer, Soft Drink, Water, Fruit Juice, Local Union No. 744 v. Metropolitan Distributors, Inc.*, 763 F.2d 300, 302 (7th Cir. 1985) (same).

*Undisputed Material Facts*

Defendant Spurlino Materials is in the ready-mix concrete business. In the Indianapolis area, it operates a facility on Kentucky Avenue, one in Noblesville, and one in Linden. Its trucks and drivers deliver ready-mix concrete to construction sites throughout the Indianapolis area.

In January 2006, plaintiff Local 716 won an organizing election for Spurlino Materials drivers and batchmen. Local 716 and Spurlino Materials have not yet reached agreement on the terms of a collective bargaining agreement specific to Spurlino Materials.

Nevertheless, Spurlino Materials agreed to comply with an agreement to which Local 716 is a party, and which provides for arbitration of a wide range of disputes. Spurlino Materials was a successful bidder for some of the concrete work on the new professional football stadium construction project in downtown Indianapolis (scheduled for completion later this summer). The stadium project was covered by a project labor agreement ("PLA"), which covered a host of employers and trade unions setting forth terms for work to be done on the stadium project. As a condition of working on the stadium project, in February 2006, Spurlino Materials agreed to be bound by the PLA. Green Aff. ¶ 3.

When Spurlino Materials was working on the stadium project, it paid its drivers a higher hourly wage for their work on concrete deliveries to the stadium. As relevant here, the record here indicates that the higher wage rate applied from the time a driver left the Spurlino Materials facility on Kentucky Avenue until the driver returned to that facility. For any week in which a Spurlino Materials driver made even one delivery to the stadium project, Spurlino Materials also paid full weekly pension and benefits contributions for that driver to multi-employer pension and benefit plans.

Spurlino Materials employed Mark Sims as a driver for its ready-mix concrete trucks in 2006. Sims worked on the stadium project and many other jobs for Spurlino Materials. He was a member of the bargaining unit at Spurlino Materials, though as noted, there was no collective bargaining agreement in place

that was specific to Spurlino Materials. For his time on the stadium project, Spurlino Materials paid Sims the higher hourly wages. Sims was paid the lower standard Spurlino Materials wage for his other hours. For weeks in which Sims did any work on the stadium project, Spurlino Materials made the required pension and benefit contributions under the PLA.

On August 4, 2006, Sims made a delivery of concrete to a regular customer and then returned to the Kentucky Avenue facility. He asked the company dispatcher if he could go home early. He was told he could not leave because he was needed for more work. Sims responded with comments that the company has treated as a threat to drive his concrete truck into a company building.[1]

The dispatcher did nothing immediately. A little more than an hour later, after Sims had calmed down, the dispatcher loaded Sims' truck for a delivery to the stadium project. Sims left to make the delivery to the stadium project. The

---

[1]Sims asked the dispatcher if he needed volunteers to go home and was told "not yet." According to an undisputed transcript of the recorded conversation, Sims responded:

> No not yet, check this out man and you can pass this on, after looking at my check and seeing they are still dicking me out of my money man, I feel real faint and I'm not saying that to get out of work. I'm telling you this because I'm tired man I'm real tired and you can ask any driver they will let you know how tired I am, and I don't know how good I am going to drive this truck cause driving it thru this building sounds real good about now man. I'm tired of working dude and they tell ya I get checks with zero. I make no f***ing money work 60 hours. I'm really f***ing stressed this minute right this f***ing minute.

Rollings Aff., Ex. A.

dispatcher then reported to management that Sims was "on a rampage" and had threatened to drive his truck into a building. Spurlino Materials manager Gary Matney decided to send Sims home immediately upon his return from the stadium project, and he suspended Sims the next day. Matney Aff. ¶¶10, 12. Management also filed a complaint with the police, though there was no further police action. Sims never worked for Spurlino Materials again.

Local 716 was under the impression that Sims had been fired, and it filed a grievance on August 11, 2006. Spurlino Materials responded by saying that Sims had only been suspended pending an investigation. Four months later, in December 2006, Spurlino Materials informed Local 716 that it had decided to fire Sims. Local 716 filed a new grievance on December 12, 2006, invoking the grievance and arbitration provisions of the PLA. Spurlino Materials responded by saying that the PLA and its grievance and arbitration provisions did not apply to Sims' termination based on his conduct at the Kentucky Avenue facility, and that no grievance procedure applied to the matter.

The PLA included a provision that employees may be fired for cause. PLA § 6.2 (Compl. Ex. A). The PLA also provided: "Each Employer shall have the right to terminate any employee who fails to satisfactorily, competently, and diligently perform his/her assigned work; however, such termination is subject to the grievance procedure of the applicable collective bargaining agreement listed in

Attachment C." PLA § 6.5. The applicable collective bargaining agreement listed for Local 716 provided for grievances of employee terminations.

The PLA included provisions concerning its scope. One stated: "This Agreement shall apply only to Employers who perform Construction Work on the Project during the term of this Agreement at the Project Site." PLA § 2.1.[2] The PLA also provided:

> Subject to the provisions of this Article 2, it is agreed that each Employer, before performing any Construction Work on the Project, shall become signatory to and be bound by the terms and conditions of this Agreement as applicable to the work to be performed by such Employer by signing a Letter of Assent and filing it with the Council, the ISCBA and CM.

PLA § 2.4. The PLA provided:

> The Parties agree and recognize that each Employer's recognition of the appropriate signatory Union(s) is only for Construction Work on the Project, and as further limited in Article 2 of this Agreement. The signatory Unions agree and acknowledge that the Employers bound to recognize a signatory Union solely by this Agreement are not obligated to recognize signatory Unions at any other construction project, at any other location, or for any other reason.

---

[2]In its briefs, Spurlino Materials edited this sentence in a way that makes it appear narrower. Spurlino Materials wrote: "The Project Labor Agreement plainly limits the scope of its applicability to construction work performed '*on the Project* during the term of this Agreement *at the Project Site*.'" Def. Br. 7 (emphasis added by defendant); Def. Reply Br. 5 (same). By deleting the subject, verb, and direct object of the sentence, that editing removes the point that the PLA applied to employers who performed work on the project, without limiting in that particular sentence the scope of its application to those employers.

PLA § 3.3. Each employer was required to sign a letter of assent in which it agreed "to comply with all of the applicable terms and conditions of [the PLA] as it relates to such Employer's portion of the work with respect to the Project (as those terms are defined therein)." PLA, Att. A. The construction agreement between Local 716 and Associated General Contractors of Indiana, Inc. recognized that an employee could perform some of his work under the agreement and some outside the scope of the agreement. See Def. Ex. 2 at 12 (requiring pension contributions for each week, on each regular employee, "even though such employees may work only part-time under the provisions of this Agreement").

The PLA included a very broad arbitration clause that covered both Local 716 and Spurlino Materials: "Any dispute concerning the application, interpretation, or an alleged violation of this Agreement shall be considered a grievance subject to resolution under the following procedures, except that jurisdictional disputes shall be resolved according to the provisions of Article 15. . . ." PLA § 14.3. (There followed a two-step process for a grievance followed by binding arbitration.) No language in the PLA specifically excluded arbitration of any category of disputes that would include the Sims firing. As noted, Section 6.5 provided that disputes over employee terminations were subject to grievance and arbitration.

Spurlino Materials initially refused to pay its employees the wages and benefits called for by the PLA for their work on the stadium project. On

February 19, 2006, Local 716 filed a grievance on this point. That grievance was settled by Spurlino Materials' agreement (short of arbitration) to pay the PLA wage and benefit rates both retroactively and prospectively.

Local 716 has offered as undisputed material facts a number of matters related to its long-term dispute with Spurlino Materials, including unfair labor practice charges, administrative proceedings before the National Labor Relations Board, and this court's issuance of an injunction under section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j). See *Lineback v. Spurlino Materials, LLC*, 2007 WL 3334786 (S.D. Ind. Nov. 8, 2007), appeal pending, No. 07-3925. Those matters might provide interesting background for a reader interested in the parties' motives and the investments in this particular dispute, but these matters are not relevant to the narrow legal question now before the court, which is whether Local 716 is entitled to compel arbitration of its grievance over the suspension and firing of Sims.

*Discussion*

Arbitration is a matter of contract. A party cannot be required to submit to arbitration any dispute that it has not agreed so to submit. *International Brotherhood of Electrical Workers, Local 21 v. Illinois Bell Telephone Co.*, 491 F.3d 685, 687 (7th Cir. 2007), quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). But where a contract includes an arbitration clause, there is a presumption of arbitrability in the sense that "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts should be resolved in favor of coverage." *AT&T Technologies*, 475 U.S. at 650, quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Thus, when a labor agreement contains an arbitration clause, there is a presumption of arbitrability that may be overcome only with "forceful evidence" of an intent to exclude the claim. *International Union of Operating Engineers, Local Union 103 v. Indiana Construction Corp.*, 13 F.3d 253, 256 (7th Cir. 1994), quoting *Oil, Chemical and Atomic Workers International Union v. Amoco Oil Co.*, 883 F.3d 581, 587 (7th Cir. 1989), quoting in turn *Warrior & Gulf*, 363 U.S. at 585.

In deciding an issue of arbitrability, a court must take care to avoid deciding the merits of the underlying claim. *IBEW Local 21*, 491 F.3d at 688, citing *AT&T Technologies*, 475 U.S. at 650. Even disputes involving the scope and validity of

an arbitration agreement are ordinarily matters for the arbitrator to decide. *Id.* (affirming order compelling arbitration where union made good faith allegation that recognition clause had been violated); *Air Line Pilots Ass'n, Int'l v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 555-56 (7th Cir. 2002) (reversing denial of arbitration where arbitrability and merits of grievance were intertwined).

As applied to this case, these principles mean that Local 716's grievance of Sims' firing is arbitrable under the broad arbitration clause of the PLA. Spurlino Materials may argue to the arbitrator that the circumstances of and reasons for Sims' firing take his case outside the scope of the PLA, but an arbitrator must make the decision about the merits of those arguments.

The language of the PLA does not defeat Local 716's demand for arbitration. The arbitration clause in Section 14.3 is very broad, applying to "Any dispute concerning the application, interpretation, or an alleged violation of this Agreement." That describes this dispute to a T. The parties' briefs in this court show that there is room for reasonable argument about the scope of the PLA as applied to Sims' case. Section 2.1 of the PLA provided that the agreement applied to employers who performed construction work on the stadium project, and not merely to construction work on the stadium project, as Spurlino Materials' edited quotation would indicate. Employee terminations are clearly arbitrable under the PLA, and the PLA covered at least some of Sims' work. See § 6.5. It is not frivolous to suggest that the PLA's protections against arbitrary firing would not

be worth much if the employer could trump up reasons to fire an employee for conduct not directly related to work on the stadium project itself. At the same time, Spurlino Materials points out correctly that the PLA did not apply to every aspect of a participating employer's business, but the provisions cited by Spurlino Materials simply do not provide a clear answer to the Sims case. They certainly do not amount to "forceful evidence" that the Sims' matter is so far beyond the scope of the broad arbitration provision that the matter does not present an issue concerning the application or interpretation of the PLA or of an alleged violation of the PLA.

Spurlino Materials argues that Sims' firing is beyond the reach of the PLA because it fired Sims for conduct that had nothing to do with the PLA and based on conduct beyond the scope of Sims' work on the stadium project that was covered by the PLA. Spurlino Materials argues that Sims was fired for conduct away from the stadium project and before Sims was assigned to take his next load to the stadium.

That argument shows how the scope of the PLA and the merits of the Sims grievance are intertwined. After all, the grievance certainly asserts on its face a violation of the PLA, and the grievance certainly presents a dispute concerning the application or interpretation of the PLA and an alleged violation of the PLA. That description of the Sims grievance fits squarely within the scope of the arbitration clause even if Spurlino Materials ultimately persuades an arbitrator that the Sims

grievance is without merit and/or was based on conduct beyond the scope of the PLA.

Even under the company's version of the facts, moreover, one might infer that Sims was fired for his reaction to being told he needed to remain available for work, which turned out to be work on the stadium project. That was his next load, after all, so that the union can argue that Sims was preparing to do work on the stadium project, or at least was being held at work so that he was available to work on the stadium project, at the time of the incident the company relies upon to justify his firing. Spurlino Materials suspended Sims immediately upon his return from a delivery to the stadium project. Matney Aff. ¶¶ 10, 12. And Local 716 points out that when an employee is terminated for conduct even entirely away from the workplace, such terminations can be arbitrable. Pl. Reply 6, citing *Paper, Allied, Chemical and Energy Workers Int'l Union, Local 5-508 v. Slurry Explosive Corp.*, 107 F. Supp. 2d 1311 (D. Kan. 2000); Bethel, *Negligent Retention and Arbitration: The Effect of a Developing Tort on Traditional Labor Law*, 2000 J. Disp. Resol. 215, 222 (2000) (parties commonly commit issues of off-duty misconduct to arbitration); Kearney, *Arbitral Practice and Purpose in Employee Off-Duty Misconduct Cases*, 69 Notre Dame L. Rev. 135 (1993).

The comparison to off-duty misconduct is far from perfect, of course, since Sims was actually on duty with Spurlino Materials at the time of the conversation that was interpreted as a threat. The critical point for the present is that the court

could not accept Spurlino Materials' arguments without making a decision about the true reasons for its decisions to fire Sims, a matter that goes right to the heart of the merits of the underlying dispute and whether Sims' comments were sufficient to justify termination. Those factual disputes would also prevent summary judgment for either side, so that the court would, under Spurlino Materials' theories, need to have a trial about the reasons for the firing to decide whether the firing is arbitrable.

To accept Spurlino Materials' arguments, the court would also need to determine much more precisely the scope of the PLA in a case where its language offers both sides reasonable grounds for argument as to whether it might apply to an employer's termination of an employee who had worked on the stadium project and who was expected to work more on the stadium project, particularly where the employer relies on an incident that occurred between specific jobs and while the employer had directed the employee to remain available to work so that he could do more work on the stadium project that day, and where the employer suspended the employee immediately upon his return from a stadium project job. The PLA does not sharply define when an employee is covered by the PLA and when he is not, and for what purposes.

The better approach here, and the one directed by the principles set forth in *AT&T Technologies*, *IBEW Local 21*, and *Air Line Pilots Association*, to name just a few cases, is to let Spurlino Materials make those arguments to the arbitrator.

The arbitration clause exists and is broad, and clearly applies to at least some employee terminations. Spurlino Materials has not shown "forceful evidence" putting this dispute beyond the scope of the arbitration clause. The arbitrator may consider whether there is a sufficient link between Sims' firing and the stadium project and the PLA to support arbitration. This is so because the arbitration clause in the PLA is so broad, covering "Any dispute concerning the application, interpretation, or an alleged violation of this Agreement." See *IBEW Local 21*, 491 F.3d at 688 (collecting cases and affirming order of arbitration under an arbitration clause not as broad as the PLA in this case).[3] A party cannot avoid arbitration by arguing that the grievance simply lacks merit; that is an issue for the arbitrator. In other words, the parties agreed to let an arbitrator decide whether the PLA applies to a particular dispute and, if so, how the PLA should be interpreted to apply to it.

Accordingly, the court grants Local 716's motion for summary judgment and denies Spurlino Materials' motion for summary judgment. The court will enter a final judgment ordering arbitration of the union's grievance of Mark Sims' termination.

So ordered.

---

[3] The arbitration clause in the stadium project PLA is considerably broader than the clause at issue in *IBEW Local 21*, which included some limiting language that divided the appellate panel. See 491 F.3d at 693-94 (Sykes, J., dissenting).

Date: July 10, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Robert J. Brown
THOMPSON HINE LLP
bob.brown@thompsonhine.com

Neil E. Gath
FILLENWARTH DENNERLINE GROTH & TOWE LLP
ngath@fdgtlaborlaw.com